IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

WANDA THOMAS and
JOHN R. THOMAS, SR., her husband;
JOYCE PENDRY; DOROTHY
SPEAREN and C.E. SPEAREN, II,
her husband; and ROSELLA TRAIL and
ROGER TRIAL, her husband,

      Plaintiffs,

v.            CIVIL  ACTION  NO.  5:05-0094

WYETH a/k/a WYETH, INC. (f/k/a American
Home Products Corporation), et al.,

      Defendants.

MEMORANDUM OPINION AND ORDER

    Pending before the Court is Plaintiffs' Motion to Remand.  For the reasons set forth herein the motion is **DENIED**.

I.
Factual Allegations and Procedural Background

    Plaintiffs Wanda Thomas, John R. Thomas, Joyce Pendry, Dorothy Spearen, C.E. Spearen II, Rosella Trail, and Roger Trail[1] filed suit in the Circuit Court of Raleigh County, West Virginia on July 8, 2004.  Plaintiffs Wanda Thomas, Joyce Pendry, Dorothy Spearen, and Rosella Trail all underwent hormone replacement therapy ("HRT") and allege that as a result of the HRT they each

---

    [1]John R. Thomas is the husband of Wanda Thomas, C.E. Spearen II is the husband of Dorothy Spearen, and Roger Trail is the husband of Rosella Trail.

developed serious illnesses.[2] Plaintiffs' complaint named as defendants two local pharmacies, Contact Pharmacy and Colony Drug Company (the Pharmacy Defendants), along with numerous manufacturers of HRT (Drug Defendants).  Defendants removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1446(b) and 1332(a), maintaining that the Pharmacy Defendants were fraudulently joined to defeat diversity jurisdiction. Plaintiffs deny that allegation and their Motion to Remand is currently before the Court.

## II.
## Standard of Review

"In order to establish diversity jurisdiction, the parties must be completely diverse; none of the plaintiffs may share citizenship with any of the defendants." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999).  However, the Court will ignore a nondiverse defendant's citizenship if the plaintiff fraudulently joined that defendant.  In determining fraudulent joinder, the Fourth Circuit implemented the following test:

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either:
>
> > [T]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or
> > [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

---

[2]Wanda Thomas, who underwent HRT from approximately 1990 to 2000, was diagnosed with breast cancer and other medical conditions in 2000; Joyce Pendry, who underwent HRT from approximately 1982 to 1999, was diagnosed in 1999 and 2001 with breast cancer; Dorothy Spearen, who underwent HRT from approximately 1998 to 2003, was diagnosed with Lupus in 2003; Rosella Trail underwent HRT since approximately 1994 and in 2002 was diagnosed with asthma.

*Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)); *see also AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (stating that "joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming") (internal quotations and citations omitted).

The *Marshall* court further explained that "[t]he burden on the defendant claiming fraudulent joinder is heavy:  the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor."  6 F.3d at 232-33 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)).  *See also Rinehart v. Consolidation Coal Co.*, 660 F. Supp. 1140 (N.D. W. Va. 1987).  This standard is even more favorable to a plaintiff than the one for ruling on a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6).  *See, e.g.*, *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (stating that inquiry into validity of complaint is more searching under Rule 12(b)(6) than when party claims fraudulent joinder).  As the *Marshall* court noted, this doctrine implements "Congress' clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction."  6 F.3d at 232 (citing *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 10 (1951)).

The Court must apply West Virginia choice-of-law rules.  West Virginia tort and contract law will guide the Court in deciding if there is *any possibility* that the plaintiff would be able to establish a cause of action against the Pharmacy Defendants in state court.  *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

-3-

**III.**
**Analysis**

Plaintiffs bring several causes of action against the Pharmacy Defendants including: (1) negligence; (2) failure to warn; (3) breach of express and implied warranty; (4) misrepresentation by seller of chattel; (5) civil conspiracy; (6) fraud; and (7) fraudulent concealment. Defendants argue that West Virginia Code § 30-5-12 affords the Pharmacy Defendants immunity from any liability as a result of dispensing HRT. Plaintiffs' counter that Defendants are misplaced in their reliance on West Virginia Code §30-5-12, arguing that the code section only provides immunity from strict liability in products liability actions. West Virginia Code §30-5-12 specifically provides:

> all persons, whether licensed pharmacists or not, shall be responsible for the quality of all drugs, chemicals and medicines they may sell or dispense, with the exception of those sold in or dispensed unchanged from the original retail package of the manufacturer, in which event the manufacturer shall be responsible.[3]

This section has been interpreted to bar claims against pharmacies for negligence, willfulness, wantonness, breach of express and implied warranty, and intentional infliction of emotional distress in similar cases. *See In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 295 (S.D.N.Y. 2001)(multi-district litigation which included one West Virginia action); *Baker v. Purdue Pharma L.P., et al.*, No. 01-0553 (S.D.W.Va. Mar. 28, 2002)(unpublished opinion). In those cases, the courts found that the plaintiffs failed to allege that the drug in question was dispensed in a condition

---

[3]The State of West Virginia Board of Pharmacy interprets West Virginia Code §30-5-12 to mean, "if a pharmacist only counts out or measures the correct prescribed drug in the prescribed dosage from the original retail package received in bulk, stock bottles from the manufacturer and transfers that dosage unchanged to the pill bottle or container given to the consumer, then they are not liable for the quality of such drugs; the manufacturer is. The pharmacy can only assume that any FDA approved prescription drugs received from the manufacturer are of good quality and if dispensed as received would achieve its therapeutic purpose." *See* Defendants' Response to Plaintiffs' Motion to Remand, Exhibit A.

-4-

other than its original packaging.  *Id.*  The Court finds that Plaintiffs in the present action have also failed to make such factual allegations.[4]

Plaintiffs, in support of their motion to remand, rely upon the opinion of the court in *Little v. Purdue Pharma, L.P.*, 227 F.Supp.2d 838 (S.D. Ohio 2002).  In *Little*, the plaintiffs' case involved the prescription pain medicine OxyContin.  *Id.* at 842.  Specifically, the plaintiffs brought claims of "(1) strict product liability; (2) negligence; (3) breach of express warranty; (4) breach of implied warranty; (5) violation of Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq*; (6) fraud; and (7) unjust enrichment."  *Id.* at 843.  These claims were brought against the corporate manufacturers of OxyContin (corporate defendants) as well as local pharmacies (local defendants).  *Id.* at 842.  The corporate defendants removed the case to federal court on the basis of diversity jurisdiction, arguing that the local defendants were fraudulently joined.  *Id.*  Plaintiffs in turn moved to remand.  *Id.*  The court in considering whether the local defendants had been fraudulently joined, analyzed the plaintiffs' claims both under common law and under the Ohio Products Liability Act (OPLA).  *Id.* at 849-50.  Under common law, the court found that the question of whether a pharmacy can be held liable either under a strict liability or negligence standard was a matter of first impression in Ohio; therefore, in the interest of comity it refused to reach a determination that had yet to be answered by the state court.  *Id.*  The court also questioned the application of the "learned

---

[4]Plaintiffs have submitted a supplemental argument in support of remand in which they provide the deposition testimony of a pharmacist at a non-party pharmacy who states that it is industry practice that the HRT drugs are received in large quantity bottles and the pharmacist count them into smaller bottles prior to dispensing.  The Court's opinion; however, is based upon "the record as it stands at the time defendants filed their petition for removal."  *Weekly v. Olin Corp.*, 681 F.Supp. 346, 348 n.4 (N.D.W.Va. 1987) (citing 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §3721, at 309 (2d ed. 1985)).  Therefore, the Court will not consider the deposition testimony contained in Plaintiffs' supplemental brief.

intermediary" doctrine to pharmacies.  *Id.* at 850.  Additionally, the court considered the defendants'
argument that the plaintiffs' claims were barred by the OPLA, specifically Ohio Rev. Code §
2307.78.  *Id.*  The court found that the provision on which the defendants relied "only governs when
a supplier may be held liable for the acts of the manufacturer; it does not concern the liability of a
supplier *qua* supplier."  *Id.* at 851.  The court also noted that the Ohio Supreme Court had previously
held that the OPLA does not supersede common law claims.  *Id.* at 852.  Therefore, the court found
that the local defendants had not been fraudulently joined and remand was proper.  *Id.*

Plaintiffs' reliance on *Little* is misplaced.  In remanding the case, the *Little* court relied in
part on the OPLA, an act which is much different than the West Virginia statute at issue in the
present case.  The OPLA only addressed when a supplier may be held liable for the acts of a
manufacturer; therefore, because the plaintiffs in *Little* were alleging claims against the suppliers
as the supplier, the Act did not relieve them of liability.  However, the West Virginia statute
currently before the Court protects pharmacies from all claims if their actions fall within the
coverage of the statute as discussed above.  The reach of West Virginia Code §30-5-12 is much
broader than that of the OPLA, covering both common law and statutory claims.  Therefore, relying
on *In re Rezulin Products Liability Litigation* and *Baker v. Purdue Pharma L.P., et al.*, which
interpreted West Virginia Code §30-5-12, the Court finds Plaintiffs' claims of negligence, failure
to warn and breach of express and implied warranty barred under §30-5-12.

The Court also finds that Plaintiffs' allegations in the present case against the Pharmacy
Defendants are also insufficient to form viable claims of misrepresentation by seller of chattel,
conspiracy and fraud.  Plaintiffs provide in their complaint an extensive factual history of the HRT
market in the United States and Wyeth's position within that market.  However, not one factual

allegation is centered around the activities of the pharmacies.  Plaintiffs allege that Wyeth and other manufacturers engaged in nationwide marketing techniques, targeting doctors and health care providers, to tout the benefits of HRT even though they had failed to perform adequate testing on the long-term effects of such treatment, "fraudulently inducing physicians and patients alike to use Wyeth's HRT products under the false assumption that such drugs had been sufficiently tested." *See* Plaintiffs' Complaint at 61.  At no point in the sixty-five pages of factual allegations contained in their complaint do Plaintiffs provide any allegations that the Pharmacy Defendants were not subject to the same fraudulent inducement as were the doctors and health care providers.  The Complaint contains no allegation that the Pharmacy Defendants received complete and accurate information as to the effectiveness and risks of HRT.  Furthermore, Plaintiffs never factually allege that the Pharmacy Defendants did anymore than dispense HRT under a prescription to the female Plaintiffs.

The Court recognizes that the standard for finding that the Pharmacy Defendants have not been fraudulently joined is more favorable to Plaintiffs than a motion to dismiss.  However, Plaintiffs' thinly alleged claims of civil conspiracy and fraud are not supported by a single factual allegation.  The Court, therefore, finds that Plaintiffs have failed to allege any facts against the Pharmacy Defendants that would take their action outside the protection afforded by West Virginia Code §30-5-12. .

## IV.
## Conclusion

For these reasons, the Court concludes that the Complaint fails to state a viable theory against the Pharmacy Defendants. Therefore, the Court finds that the Plaintiffs fraudulently joined

the Pharmacy Defendants.  The Court accordingly **DENIES** the Plaintiff's Motion to Remand and **DISMISSES** the claims against the Pharmacy Defendants.

The Court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        June 16, 2005

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE